1  PHILLIP A TALBERT
   United States Attorney
2  DAVID GAPPA
   Assistant United States Attorney
3  2500 Tulare Street, Suite 4401
   Fresno, CA 93721
4  Telephone: (559) 497-4000
   Facsimile: (559) 497-4099
5
   NADIA C. PRINZ
6  Trial Attorney
   U.S. Dept. of Justice, Criminal Division
7  Child Exploitation and Obscenity Section
   1301New York Avenue NW, 11TH Floor
8  Washington, DC 20005
   Telephone: (202) 774-7562
9  E-mail: nadia.prinz@usdoj.gov

10 Attorneys for Plaintiff
   United States of America

11

12

13            IN THE UNITED STATES DISTRICT COURT

14              EASTERN DISTRICT OF CALIFORNIA

15

16 UNITED STATES OF AMERICA,          CASE NO.  1:20-CR-00040 DAD-BAM

17               Plaintiff,

                                      UNITED STATES' SENTENCING MEMORANDUM
18        v.

                                      Ctrm:    5
19 CHRISTOPHER JEORGE MILLICAN,       Hon.     Hon. Dale A. Drozd
                                      Date:    November 3, 2022
20               Defendant.           Time:    11:30AM

21

22    I.    INTRODUCTION

23        The United States of America, by and through its attorneys, PHILLIP A. TALBERT, United

24 States Attorney for the Eastern District of California, DAVID L. GAPPA Assistant United States

25 Attorney, and NADIA PRINZ, Trial Attorney, files this sentencing memorandum to aid the Court in

26 understanding this case and to arrive at the most appropriate sentence.  The government has also

27

28                                        1

submitted several exhibits, for filing under seal, which support the government's position.  That material has been made available to defense counsel and was admitted into the record at trial.

The government recommends a sentence that includes the following components:  600 months imprisonment followed by a lifetime term of supervised release. These recommendations are amply justified by an analysis of the factors set forth in 18 U.S.C. § 3553(a), as well as the relevant United States Sentencing Guidelines (USSG), and they are necessary to provide just punishment, adequate deterrence, protection of the public, and needed psychological treatment for Millican's serious offense conduct.

## II.        CALCULATION OF THE USSG RANGE

The government agrees with the Probation Office's calculation of the sentencing range under the USSG. (ECF No. 87 (PSR) at ¶ 32-44). More specifically, the government concurs with Probation's application of the specific offense characteristic under § 2G2.1(b)(6). PSR at ¶ 37.  Millican qualifies for this enhancement under both prongs: the offense involved both "(A) the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage sexually explicit conduct" and "(B) the use of a computer or an interactive computer service to (i) persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct."

As to the first prong, the evidence clearly demonstrates that Millican sought to connect with and ingratiate himself with Minor Victim 1 (MV1), for the purpose of inducing her to send him sexually explicit images. In misrepresenting his age as 19, he furthered his goal, as minors naturally are more interested in communicating with, confiding in, and sharing pictures with someone they perceive as a peer rather than an adult. It belies common sense to accept Millican's argument that he misrepresented his identity solely to satisfy his own vanity without reference to the context of the statement.  His statements about his age were made directly to MV1; thus, any motivation of vanity suggests that he was concerned with appealing to her specifically.  Moreover, if Millican was merely insecure about his appearance, he could have simply decided to not send any pictures himself.  Instead, he sent MV1 a

picture because he wanted to gain her trust and to establish a relationship, all with the intent to further his goal of receiving sexually explicit images from her.

As to the second prong, it is clear from the trial testimony and exhibits that Millican used Snapchat and the internet via a smartphone or tablet to communicate with and exploit MV1. Thus, the offense level should be increased by two levels under USSG § 2G2.1(b)(6).

The government also concurs with the Probation Office that USSG §4B1.5(b)(1) applies, bringing the total adjusted offense level to 43. PSR at ¶ 42. This provision unquestionably applies, because MV1 created sexually explicit images of herself at Millican's request on more than one occasion.  A defendant engages in a "pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5 cmt. n.4. At trial, the Court admitted into evidence a number of sexually explicit images and videos of MV1. These images can be grouped by their apparent location and by the dates referenced in the filenames.  One set depicts MV1 in various stages of undress in her bedroom, including an image in which her underwear is pulled aside to expose her naked vulva in the center of the image, Trial Exhibit 20A.  Two other images, Exhibits 20D and 20E, show her standing in front of a full-length mirror, with her clothes pulled down to her legs to expose her naked body, including her pubic area, which is in the center of both images. In Exhibit 20D her face is not completely within the frame.

Another set of exhibits depicts MV1 in a bathtub. These include still images, cropped to focus on her exposed genitalia, and also videos, in which she manipulates her exposed labia and vulva with her fingers.  Exhibits 20H-20L.  Both sets of images clearly meet the definition of sexually explicit conduct, which includes lascivious depiction of the genitals or pubic area, as well as masturbation.  *See* 18 U.S.C. § 2256(2).

Contrary to the assertion in Millican's sentencing memorandum, the government does *not* agree that the photographs from these two locations were taken on the same date. *See* ECF No. 88 at 5.  In fact, the file names for these recovered images indicate that they were saved by Millican on different dates, approximately one month apart. The images in which MV1 is posing in her bedroom were saved

to Millican's Snapchat account on June 22, 2018, e.g. Exhibit 20C, for which the filename is "chat~batched_media~2018-06-22-15-54-21UTC~tf15460~tf15460~saved~tf15460~a4f473c3-633a-a8f1-f38e-484a6385d6dc~v4.jpg." The still images and videos in which MV1 is posed in her bathtub were saved to Millican's Snapchat account on July 26, 2018, e.g. Exhibit 23E, for which the filename is "chat~media_v4~2018-07-26-03-02-43UTC~tf15460~tf15460~saved~bc854500-40dd-414d-8651-6533e6361dfd~v4.mp4." It is illogical to assume that they could have been created on the same date when they were saved on different days, one month apart.

Additionally, based on their content, these images clearly depict separate instances of exploitation. These two sets of images involve different poses, a different setting, different attire (in some the victim is partially clothed, in others completely nude), and different actions on the part of MV1. Therefore, the Court should find that the two sets of sexually explicit images admitted at trial constitute two separate occasions. *See United States v. Cates*, 897 F.3d 349, 356-357 (1st Cir. 2018) (district court did not err in treating two similar instances involving the same minor as separate where they retained their distinct character: they occurred days apart and involved discrete sexual acts). *See also United States v. Isaac*, 987 F.3d 980, 993-4 (11th Cir. 2021) (instances of production were distinct and not continuous since other events transpired between the occasions.)

Moreover, there is more than sufficient other evidence in the record to indicate that Millican engaged in prohibited conduct with MV1 on more than one occasion. Specifically, MV1 testified that she sent over 100 pictures and videos to Millican over the course of their relationship, which spanned the course of several months. Therefore, the images recovered from this particular account, in June and July of 2018, does not constitute all of the sexually explicit material she created for him. MV1 is prepared to testify at the sentencing hearing that the majority of the images she sent to Millican were sexually explicit. Thus, the Court can find that there were more than two occasions on which Millican sexually exploited MV1, thereby engaging in a pattern of activity as defined at USSG § 4B1.5(b). Accordingly, the government agrees that, with a criminal history category of I, and in light of the statutory maximum term, Millican's USSG range for imprisonment is 600 months. PSR at ¶ 81.

### III.   THE § 3553(a) FACTORS

Under 18 U.S.C. § 3553(a), when imposing a sentence, a court should consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of a defendant; (3) the need for the sentence imposed to promote the goals of sentencing; (4) the kinds of sentences available; (5) the sentencing guideline range; (6) any pertinent policy statement issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense.

### A.   Nature and Circumstances of the Offense

The nature and circumstances of Millican's crimes warrant a guideline sentence, which would reflect the seriousness of Millican's conduct.  Beginning in or about March of 2018, Millican callously and continuously sexually exploited a then 15-year-old, MV1, by coercing her into creating and sending him sexually explicit images of herself.  The conduct began on MV1's fifteenth birthday when he contacted her through Snapchat and almost immediately requested explicit images of her.  Once she sent the first compromising image of herself, Millican knew that he would be able to leverage threats and did so, in increasingly aggressive ways, for approximately nine more months.

And MV1 was not the first or only minor that Millican sexually exploited or attempted to sexually exploit.   He came to the attention of law enforcement agents in August of 2018, when Snapchat forwarded a report to the National Center for Missing & Exploited Children (NCMEC) CyberTipline. This CyberTip reported that a parent of an 11-year-old reported that the user of a Snapchat account subsequently linked to Millican had contacted her child and engaged in inappropriate communications with her.

A search warrant for Millican's Snapchat account returned content from June and July of 2018, which revealed his communications with many minors, as well as the sexually explicit pictures and videos of MV1. Millican's Snapchat account content revealed that he knowingly chatted with other minors as young as 11, 13, and 14. During these chats, Millican acknowledged their respective ages,

asked them for pictures, commented on pictures they sent him, and used flirtatious and sexual language. The account content also revealed that Millican tracked his victims, gathered information on them including their physical locations, and kept notes about how to best approach and exploit them, such as for one minor's profile, on which he wrote "13 and innocent be gentle."  On another profile he noted "Blocked me cause I asked to [sic] much about pics :/ try to go easier on her." He also frequently asked these minors to call him "daddy."

When interviewed by HSI and NCIS agents, Millican confirmed his Snapchat username. He confessed that he had communicated with as many ten minor females who sent him nude photographs. Millican also admitted that he had used multiple Snapchat accounts and/or usernames in order to contact and chat with minor females. Thus, the evidence at trial showed that Millican pursued a methodical and repetitive course of conduct, wherein he exploited or attempted to exploit multiple minors in order to satisfy his own deviant sexual fantasies and urges.

In fashioning the sentence, the Court should consider the impact of Millican's actions on MV1 as well as other victims, some of whom law enforcement was not able to fully identify.  MV1 testified at trial about how she did not wish to produce the material Millican coerced her to create.  She testified that she feared disobeying Millican, blocking him, or otherwise cutting off communications with him, thinking he might either disseminate her images or victimize her friends. She even feared that Millican could get her expelled from her school.  As a vulnerable, impressionable a fifteen-year-old, for whom her friends and social media presence meant everything, she suffered not only from Millican's sexual exploitation, but also from the stress of coping with the dilemma that he made her endure month after month. In trial exhibit 23C it is evident that MV1 was crying.  Millican's reaction to her distress was to tell her that it was unattractive for her to cry in the material she made for him.

MV1's trial testimony as to how she was affected by Millican's conduct illustrates how the "use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Osborne v. Ohio*, 495 U.S. 103, 109 (1990); *see also* Shanta R. Dube et al., *Long-Term Consequences of Childhood Sexual Abuse by Gender of Victim*, 28(5 ) Am J Prev Med, 430, 430

1   (2005) ("studies examining the long-term effects of childhood abuse and related stressors have found

2   increased risk for outcomes such as substance use and misuse, psychiatric disorders, suicide, and

3   numerous other health and social problems").  Keeping in mind that MV1 was the only victim who

4   testified at trial, but not the only minor that Millican victimized, the long-term effects of Millican's

5   abuse bear upon the need for just punishment.   A 60-year term of imprisonment would adequately

6   reflect the nature of Millican's serious crimes.

7

8   **B.      History and Characteristics of Millican and the Need to Deter Future**
          **Criminal Conduct and to Protect the Public**

9        Millican's history and characteristics weigh in favor of a guideline sentence. Despite his lack of prior

10   criminal history, Millican's conduct has shown him to be a habitual offender, searching for and preying on

11   minors online. The conduct for which Millican is being sentenced clearly demonstrates both that he is

12   sexually attracted to children and that he poses a danger to them. For instance, MV1 testified that Millican

13   admitted his attraction to her was based on her youthful and undeveloped appearance. He also would ask her

14   to change her voice to appear even younger.  Millican reached out to minors as young as 11 on Snapchat,

15   further proof that he was attracted to and seeking to exploit children specifically.

16        Although, Millican cites a self-reported history of poverty, neglect, and abuse as mitigating

17   circumstances, none of these circumstances excuse or explain his conduct. Millican has apparently

18   experienced some hardships and suffering in his life, but he has put forth no reason for how these

19   circumstances relate to his subsequent victimization of innocent children.  If poverty and hardships such as

20   parental conflict or neglect caused people to become sexual predators, sexual exploitation of minors would

21   be even more rampant.  But fortunately, only a small percentage of children who overcome a difficult

22   childhood go on to commit sex crimes against children as adults.  What is apparent is that Millican made

23   affirmative decisions to pursue a course of conduct that demonstrates a significant lack of conscience and

24   empathy. Millican took affirmative steps to join Snapchat, search for minors online, connect with them, gain

25   their trust, and then coerce them to send him sexually explicit material.  By his own statements, he did this

26   despite multiple interventions and monitoring by his wife.

27

28                                           7

1   Millican blames his conduct in part on his immaturity and impulsivity.  At the time he committed

2   these offenses, Mr. Millican was serving in the Navy, was married, and had a child of his own. In other

3   words, he was living a life of relative stability and maturity and had an upward trajectory available to him.

4   As a parent himself, the boundaries he crossed in seeking out and exploiting young girls should have been

5   even more clear to him, regardless of his age.  Indeed, Millican's inability to resist his impulses speaks to the

6   danger he poses to children. And in thinking of his own behavior as an addiction he could not resist, Millican

7   failed to take responsibility for his actions and demonstrated a lack of comprehension as to the seriousness

8   and the impact of his crime.

9   Nor is the fact that he was serving on active duty with the United States Navy when he committed

10   these crimes an argument in his favor. Although such service would otherwise be commendable, Millican

11   has dishonored the uniform he wore by his egregious conduct during this period of service.  This is

12   confirmed by noting that the Navy removed him from their service as promptly as possible.

13   And although he has argued that he is being sentenced for essentially just one offense – the sexual

14   exploitation of MV1, that is not true.  Millican not only repeatedly coerced MV1 into creating sexually

15   explicit content and engaging in sexually explicit communications with him, he attempted to engage in the

16   same conduct with multiple minors.  Given the nature of Snapchat and its default design not to save content,

17   it is likely that Millican obtained additional material not only from MV1 but also from other victims.  This is

18   especially true given that Millican admitted that when Snapchat terminated an account (and thus deleted the

19   content, presumably for violation of its terms of service), he would simply create another account and

20   continue his pattern of behavior.  The Court will also recall that Millican admitted that he first viewed child

21   pornography at or near the time he graduated from high school, and he acknowledged that he had browsed

22   for child pornography and other disturbing content on the dark web.

23   For these reasons, Millican's sentence should both deter him, and others, from engaging in future

24   criminal conduct and also protect the public.  It is reasonable to conclude that, if given the opportunity, there

25   is a strong likelihood that Millican will recidivate, due to his sexual attraction to minors. According to *A*

26   *Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and*

27

28

*Forensic Issues*, Ryan C. W. Hall, M.D. and Richard C.W. Hall, M.D., P.A., Mayo Clin. Proc. 467 (April 2007), "The published rates of recidivism are in the range of 10% to 50% for pedophiles depending on their grouping." *See also* H.R. Rep. No. 107–527 at 2 (2002) ("Studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes").  Thus, in imposing a sentence for the creation and receipt of child sex abuse images, the Court should send a message of deterrence, both to Millican, with regard to his potential future conduct, and generally to all offenders with a sexual interest in children. An appropriately lengthy sentence is necessary to deter Millican, and other like-minded individuals, from repeating this criminal behavior, and to protect children from his actions.

Congress, in the PROTECT Act, provided for a lifetime term of supervised release for the offense for which Millican will be sentenced.  The concern was that sex offenders, such as Millican, who have demonstrated their sexual interest in minors, have restrictions placed on their access to minors, computers, the internet, etc. in order to minimize the risk that they will reoffend.  Millican has demonstrated his sexual interest in minor females, and in order to minimize the risk to society that he will reoffend, he should be subject to a lengthy period of supervision. Millican used the internet to contact multiple minors, engaging in conversations for hours at a time. Thus, he is an offender who necessitates close monitoring of his online and technology-related behavior upon his release from prison.   The longer the term of supervision, the lower the risk of reoffending that Millican will present to the public, since part of the supervision process will include registration as a sex offender, restrictions on access to minors, computers, and the internet.

### C.     Need to Provide Treatment to Defendant

Due to the nature of Millican's crimes, he should be ordered to participate in a sex offender treatment program while incarcerated to increase the chance that he might learn to control his behavior. He also should be ordered, as a condition of any supervised release, to undergo a sex offense-specific evaluation and participate in a sex offender and/or mental health treatment program approved by the Probation office.

///

### D.     JVTA and AVAA Assessments

The Justice for Victims of Trafficking Act of 2015 (JVTA) requires Millican to pay a special assessment. Under the JVTA, a court must impose a $5,000 special assessment per count for any "non-indigent person" convicted of a crime listed in Chapter 110. 18 U.S.C. § 3014(a).  The court should not impose any assessment under the AVAA in light of the dates Millican committed his offenses.

## V.     SENTENCING EXHIBITS AND IMPACT STATEMENTS

The United States reserves the right to present testimony, additional exhibits (including additional samples of Millican's child exploitation images and other material recovered during the investigation), and a supplemental filing in response to any memoranda or exhibits that Millican files or chooses to introduce prior to or at sentencing.

## VI.   CONCLUSION

In requesting a 600-month term of imprisonment and lifetime term of supervised release, the government has considered the seriousness of Millican's conduct, its impact on minor victims, the advisory sentencing guidelines range calculated by the Probation office, and the 3553(a) factors.  For the reasons stated above, the United States asks the Court to follow the recommendations in this memorandum.

PHILLIP A TALBERT
United States Attorney

By:  /s/ David Gappa
　　　David Gappa
　　　Assistant United States Attorney

　　　/s/ Nadia Prinz
　　　Nadia C. Prinz
　　　Trial Attorney
　　　United States Department of Justice
　　　Criminal Division
　　　Child Exploitation and Obscenity Section

10