PHILLIP A TALBERT
United States Attorney
DAVID GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000

NADIA C. PRINZ
Trial Attorney
U.S. Dept. of Justice, Criminal Division
Child Exploitation and Obscenity Section
1301 New York Avenue NW, 11^(TH) Floor
Washington, DC 20005
Telephone: (202) 774-7562
E-mail: nadia.prinz@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:20-CR-00040 DAD-BAM |
|---|---|
| Plaintiff, | |
| v. | UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM |
| CHRISTOPHER JEORGE MILLICAN, | Ctrm: 5 |
| Defendant. | Hon.   Hon. Dale A. Drozd |
| | Date:  December 9, 2022 |
| | Time:  11:30AM |

**I.     INTRODUCTION**

The United States of America, by and through its attorneys, PHILLIP A. TALBERT, United States Attorney for the Eastern District of California, DAVID GAPPA Assistant United States Attorney, and NADIA PRINZ, Trial Attorney, files this supplemental sentencing memorandum in opposition to the defendant's request for a two-level downward adjustment in offense level for acceptance of responsibility and his untimely additional objections to the presentence report.

///

**II.  THE DEFENDANT HAS NOT SATISFIED HIS BURDEN TO PROVE THAT HE QUALIFIES FOR ACCEPTANCE OF RESPONSIBILITY**

United States Sentencing Guidelines Section 3E1.1(a) provides for a two-level adjustment to a defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a).  The application notes to § 3E1.1(a) contain a list of factors a court should consider in determining whether a defendant has accepted responsibility, including whether the defendant has "truthfully admit[ed] the conduct comprising the offense(s) of conviction" and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.1 (2018).  Thus, the defendant bears the burden of clearly demonstrating that he qualifies for the requested adjustment.  Applying those factors here, the court should deny the defendant's requested adjustment.

The two-level adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, cmt. n.2.  Only "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." *Id.*  This so-called "rare situations" exception to the general rule may apply, "for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." *Id.*

In determining whether a defendant who was convicted at trial has proven eligibility for an acceptance-of-responsibility adjustment, courts should evaluate the nature of the defendant's trial defense.  *See United States v. Gonzalez*, 897 F.3d 1018, 1020 (9th Cir. 1990).  The Ninth Circuit has held that it was not error for a court to deny the adjustment where a defendant's "strategy at trial was to protest his innocence steadfastly." *Id.*  On the other hand, a defendant who asserts only a legal defense, such as entrapment, or challenges an interstate commerce element, or puts "on the most minimal and perfunctory of defenses, may be eligible for the acceptance of responsibility adjustment." *See United States v. Ing*, 70 F.3d 553, 555–56 (9th Cir. 1995); *United States v. Luong*, 965 F.3d 973, 991–92 (9th Cir. 2020) (holding that the court erred by denying the adjustment where the defendant "admitted his

factual guilt, but proceeded to trial to assert his offense conduct did not fall within the scope of the Hobbs Act's jurisdictional nexus."). Moreover, regardless of how a defendant manifests his or her acceptance of responsibly, it must cover all crimes of which the defendant is convicted, and that group together in the Sentencing Guidelines calculation, in order to support an adjustment for acceptance. *See United States v. Ginn*, 87 F.3d 367, 370–71 (9th Cir. 1996) (holding that a defendant must accept responsibility for all offenses of conviction); *United States v. Garrido,* 596 F.3d 613, 619–20 (9th Cir. 2010) (distinguishing *Ginn*, holding that a defendant must accept responsibility for all offenses that group under the Guidelines). And the defendant should not dispute relevant conduct for any offense of conviction. U.S.S.G. § 3E1.1 Application Note 1(A).

The court should find Millican's attempted acceptance of responsibility too little and too late, because it has been offered only after trial, after his interview by a probation officer, after completion of the presentence report and objection process, after a victim traveled to Fresno to testify in response to objections raised to offense and relevant conduct, and after the court prompted defense counsel to consider making an argument for acceptance during the sentencing hearing. Although the defendant has stated he is withdrawing most of the objections he raised to the presentence report, the record is clear that this follows the court's statements at the start and the conclusion of the sentencing hearing on November 3, 2022, that it intended to overrule the defense objections. Moreover, the defendant entered the sentencing hearing with new appellate counsel lined up which suggests that the defendant intended to pursue appellate issues related to the trial. If the defendant intended to only appeal sentencing issues, it would have made sense to see whether any issues existed and whether there was any need to appeal the sentence imposed.

And the defendant still has not provided a statement admitting all offense conduct and/or expressing remorse. While a defendant may provide a basis for a § 3E1.1(a) adjustment by expressing sincere contrition during allocution, such a late expression is generally only sufficient when a defendant has pleaded guilty to the offense of conviction rather than being convicted after a trial. Here Millican not only went to trial, he did so to contest factual guilt rather than to preserve any legal challenge for an appeal. "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits

guilt and expresses remorse." U.S.S.G. § 3E1.1, cmt. n.2; *see, e.g., United States v. Green*, 940 F.3d 1038, 1040, 1044 (9th Cir. 2019) (in a post-guilty-plea case, holding that the court may consider an allocution to determine whether to apply § 3E1.1). A defendant's self-serving statements of contrition after challenging the evidence at trial will ordinarily fail § 3E1.1's timeliness requirement. *See* U.S.S.G. § 3E1.1, cmt. n.1(H) (stating that the court must consider "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility); *see United States v. McKinney*, 15 F.3d 849, 853 (9th Cir. 1994) ("In the ordinary case, a defendant who pleads not guilty and is convicted will have a difficult time convincing the court that his subsequent acceptance of responsibility for his actions is anything but a self-serving and insincere expression.").

Millican's recent suggestion that he "meets at least six of the factors listed in the Application Notes to USSG section 3E1.1" is not convincing. Dkt. Item 101, at 4:23-24. He has failed to point to any specific admissions of all of the charged offense conduct as he is required to do if he relies upon pretrial statements and conduct. It is significant that Millican did not voluntarily surrender to authorities and confess that he had been communicating with minor females. He only provided statements to law enforcement once they learned of his crimes through a referral from the National Center for Missing & Exploited Children (NCMEC). The NCMEC referral came after Snapchat had conducted an investigation of a Snapchat account ultimately connected to Millican. Snapchat learned that the account was being used to sexually exploit children when the step-parent of an 11-year-old female contacted Snapchat to report that someone, ultimately proven to be Millican, had contacted the minor and refused to stop after the parent told him to stop. Law enforcement then conducted its own investigation to determine who was using the account. Law enforcement ultimately also identified Minor Victim One (MV1) who had independently reported Millican to the Navy and the FBI after he refused to stop threatening her if she did not continue sending sexually explicit material to him. Rather than voluntarily stopping his conduct and confessing, Millican would have continued sexually exploiting and attempting to sexually exploit minors without law enforcement intervention.

Millican's pre-trial statements do not rise to a level of assistance that merits acceptance of responsibility, particularly since he proceeded to challenge many of his statements at trial. Although the government introduced at trial some statements that the defendant provided to investigators, those

statements were elicited with much effort and patience from interviewers.  The entire interview, a portion of which was introduced during the trial, lasted several hours.  Only after approximately forty-five minutes did Millican begin to acknowledge facts with which investigators confronted him.  It took approximately an additional hour for Millican to confirm facts with which he was confronted.  Investigators were the first to mention Millican's Snapchat username, and this is significant because he then argued at trial that investigators merely fed information to him.  Investigators were also the first to question him about any plans to meet with any of the minors with whom he was communicating online, and Millican more often than not told investigators that he could not recall specific facts about his offense conduct, such as whether he received images from a particular victim.

      Millican also severely undercut the value of any pretrial statements by arguing at trial that they were not voluntary.  The defense argued in closing that Millican did not come up with all of his own admissions, but rather that he was fed information.  *See* Transcript of Defense Closing at 3:19-24.  ("Now, we did hear the prosecutor argue, well, Mr. Millican came up with things. They didn't feed him somethings. But they did. They -- at 53 minutes, Agent Kuzma, I believe it was, he brings up the Snapchat account name that they're interested in, the tf15460. He brought that up first. Mr. Millican did not bring that up first.").  The defense went even further by arguing that he was forced to make a "false confession":  "They cued him with specific information that they purported to know, and they put specific records in front of him that they purported to be records he was responsible for. So, we have a false confession."  Id. at 4:15-20.  The defense also pointed to Agent Doerbaum's alleged invocation of shared religious beliefs as an improper method of obtaining admissions from Millican.  The defense then supplemented this with an argument that he was compelled to admit information that investigators had discovered or else he would lose his position in the military.  Defense counsel's cross-examination of agents also hinted at the allegedly confined location in which the interview took place.  The government did not attempt to introduce evidence that Millican invoked his right not to answer questions when investigators returned to him, on a later date, with follow up questions.  But that would have been an opportunity for Millican to provide assistance to authorities who were attempting to complete their investigation.

///

And although the government proposed that the parties attempt to reach stipulations to streamline the trial, the defense stated it would do so only if it saw a benefit to the defendant. As a result, no stipulations were entered into the record. The defense also objected to the government's stated intention to introduce digital artifacts that were recovered from electronic devices that he had used and which were seized from him when a search warrant was executed. In the defense opening statement and closing argument the defense argued that the government was unable to prove that Millican was the person responsible for the sexual exploitation of any minor by use of a Snapchat account. The defense told the jury in the opening statement that the Snapchat records should not be attributed to him. Transcript of Defense Opening Statement at 2:8-9. He argued in closing that "[a]nd then beyond the false confession, the case falls apart for the prosecutor. And what falls apart is the link between Mr. Millican and any kind of Snapchat messages alleged here. And we have a fictitious Snapchat account. Does not identify any particular user at all." Transcript of Defense Closing at 4:19-24. He argued to the jury, "I'll show you -- Mr. Millican's access history on Lemoore Naval Air Base. That's from Exhibit 86. And what you see there is the earliest date -- I'll zoom in. The -- we don't have Mr. Millican accessing the Naval Air Station July25th or July 26th. We don't have him accessing Lemoore Naval Air Station until July 30th. And that's circumstantial evidence about whether Mr. Millican is at the Skyraider Court residence on July 25th and 26th. If he's at the residence, we'd expect an access to Lemoore Naval Air Station on those dates or close to those dates. Wouldn't expect him to be on a long vacation or not working around that time." *Id*. at 6:8-18. Millican did everything he could to avoid being found guilty of the charged offenses, and this is a significant factor that prevents him from establishing eligibility for acceptance of responsibility after his effort to avoid responsibility for that conduct failed at trial.

And not only did Millican make a frontal assault on the government's case at trial, he continued it through the sentencing process. Surprisingly, he is still objecting to relevant conduct by contesting that he solicited and received more than 600 images of child sexual exploitation material. Millican disputes his receipt of the number of images MV1 sent over the period charged in the indictment and in doing so, has clearly demonstrated that he does not fully accept responsibility for the conduct charged and described at trial. MV1 has clarified, in statements that were provided to the defendant prior to the sentencing date, that she sent at least 100 sexually explicit images **and** videos to him. These statements

are supported by the evidence at trial, which demonstrated that Millican began asking MV1 for images of herself at the end of March and continued asking for images for several months, including through the end of July. Transcript of Testimony of MV1 at 18:8-9. When asked on how many occasions she took pictures for him she indicated "I can't say for sure, but it was a lot--a lot of occasions." *Id*. at 34:10-11. Moreover, MV1 described in detail the sexually explicit nature of images she recalled and beyond what was entered into evidence. MV1 described various sexually explicit photos that the defendant asked her to capture, e.g., "He wanted very specific angles to see like my opening, as he would say. He would want me to like caress my fingers around the opening of it." *Id.* at 17:14-16. The victim recalled another pose Millican requested: "He wanted me to lie on my back and spread my legs open and then take a picture of my pussy, so it looked like he had just fucked me." Id. at 26: 12-14. She also indicated that if she didn't do the videos exactly as he told her he would have her redo them.

Considering all of the evidence, it belies common sense to think that MV1 is mistaken that she sent as many as 100 sexually explicit images and videos. Two sexually explicit videos were among the evidence presented at trial. To reach 600 images total, the victim would only need to send 6 additional videos over the course of their correspondence.[1] Finally, the government expects that MV1 will testify at sentencing that she recalls creating -- at Millican's request -- and sending to him at least 100 images and videos that depict her genitalia as the focal point of the image and/or included masturbation. In disputing the number of images and videos, Millican is contradicting MV1's assertions and denying a common-sense interpretation of the evidence presented at trial. And since the number of images would not affect his final guideline calculation at any rate, there is no legal question at issue. The defense objection therefore raises a purely factual dispute regarding the nature of his conduct with MV1. Arguably the defense contest borders on being frivolous. But no doubt it has come at the continued inconvenience to MV1 who was required, at least once, to disrupt her life by traveling to Fresno at considerable effort and inconvenience.

///

---

[1] The government's sentencing memorandum inadvertently referenced the offense conduct as taking place over the course of nine months; in fact, evidence at trial demonstrated the conduct took place over the course of approximately five or six months. *See* Dkt. Item 91 at 5:5-16.

Millican's suggestion that he qualifies for acceptance of responsibility by taking other actions is likewise not convincing. He has argued that "he voluntarily stopped his criminal conduct." Dkt. Item 101 at 5:2-3. To the contrary, when Snapchat terminated his accounts, he would simply create a new account with a slightly different username. He confirmed this during his interview, and MV1 testified that she believed Millican used more than one Snapchat account to coerce her into creating and sending sexually explicit content. And Millican essentially admitted that his compulsion to view pornography and obtain sexually explicit content of and from minors was essentially an addiction that he, even with help from his wife, could not overcome. And even though he points to providing a passcode to one iPad, he never provided the passcode to a second iPad that was seized from his residence. Law enforcement spent resources for more than one year attempting to gain access to the device by running various programs to unlock it. Millican points to not challenging his separation from the Navy, but he concedes that he did not accept the Navy's attempt to separate him with an "Other than Honorable" discharge. But his position in the Navy was not integral to commission of the offense, so even if he had voluntarily resigned (which he didn't) his position, this would not be a factor weighing in his favor. He has not pointed to any post-offense rehabilitation and has conceded that counseling he received through the Navy did not address his offense conduct. *Id*. at 5:21-25. On balance, the defendant has clearly failed to demonstrate that he qualifies for the recently requested two-level downward adjustment in offense level for acceptance of responsibility.

### III.   THE COURT SHOUD OVERRULE THE DEFENDANT'S UNTIMELY ADDITIONAL OBJECTIONS 1 AND 2 TO THE PRESENTENCE REPORT

The defendant has raised additional untimely objections to the presentence report. As discussed above, the government will present evidence, including testimony from MV1, that establishes by clear and convincing evidence that Millican coerced MV1 into creating and sending to him more than 600 images of herself engaged in sexually explicit conduct.

The government supports proposed condition of supervised release No. 2 as written. In light of Millican's offense conduct, the recommendation is currently appropriate. Moreover, the objection is moot in so far as the defendant is facing a mandatory minimum period of 15 years incarceration and the guidelines advise a life sentence. The defendant's youngest child is currently two years old. At the time

at which the defendant becomes eligible for supervised release, he can move for a modification of this condition accounting for all relevant circumstances including any wishes of his children and/or any counseling or treatment received during his period of incarceration.

However, the government does not oppose modifying the presentence report as requested in Additional Objection No. 3. Although Millican's Snapchat activity included contact with minors as young as 11, none of the recovered sexually explicit images appeared to depict prepubescent minors.

### IV. CONCLUSION

The defendant has failed to meet his burden of proving that he qualifies for a two-level reduction in offense level for acceptance of responsibility.  The court should also rule on the untimely defense objections as outlined above.

PHILLIP A TALBERT  
United States Attorney

By: /s/ David Gappa  
David Gappa  
Assistant United States Attorney

/s/ Nadia Prinz  
Nadia C. Prinz  
Trial Attorney  
United States Department of Justice  
Criminal Division  
Child Exploitation and Obscenity Section